IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| INSURANCE CORPORATION OF HANNOVER, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 04-1012-CV-W-SOW |
| VANTAGE PROPERTY MANAGEMENT, L.L.C. d/b/a BEST WESTERN OF K.C. SOUTH, | ) ) ) ) | |
| Defendant/Third-Party Plaintiff. | ) | |
| v. | ) | |
| M.J. KELLY SOUTH, INC., et al., | ) ) | |
| Third-Party Defendants, | ) ) | |
| KLEIN INSURANCE SERVICES, INC. | ) ) | |
| Third Party Defendant. | ) | |

ORDER

Before the Court are third-party defendant Klein Insurance Services, Inc.'s ("Klein") Motion for Summary Judgment (Doc. #141), Klein's Suggestions in Support, defendant Vantage Investments, Inc.'s ("Vantage") Suggestions in Opposition, and Klein's Reply. For the reasons stated below, Klein's motion is granted.

I. Background

This lawsuit involves an insurance coverage dispute under a commercial property policy of insurance. The policy was issued by plaintiff Insurance Corporation of Hannover ("ICH") to defendant Vantage for Vantage's Best Western Hotel in Kansas City, Missouri. Klein is a wholesale broker who performed certain underwriting functions with respect to the insurance

policy at issue in this lawsuit. The following undisputed material facts are relevant to Klein's pending motion:

Vantage was the operator of a Best Western Hotel located in Kansas City, Missouri. Vantage purchased a commercial property insurance policy from ICH. The policy period commenced on November 21, 2003 and ended on November 21, 2004. On August 10, 2004, a fire occurred at the hotel, causing damage.

Plaintiff ICH filed this declaratory judgment action seeking a declaration as to its coverage liability under the policy it issued to Vantage. ICH has alleged in its Complaint that there is no coverage under the policy because Vantage misrepresented in its application for insurance that the hotel had a "central station" fire alarm system and because Vantage "concealed the identities of mortgagees having interest in [Vantage's] property."

Vantage filed a Third Party Complaint against Klein, Reassurance Insurance Agency, and various MJ Kelly entities asserting claims of negligent misrepresentation (Count I), negligent procurement of the policy (Count II), and breach of contract (Count III). No other party has asserted any claims against Klein.

Joe Butte is a 50% owner of Vantage. When Vantage's previous insurance policy ended, Butte contacted Margaret "Peggy" Breece with Reassurance Insurance Agency to obtain new insurance for the hotel. Peggy Breece had been a customer at the hotel bar and had mentioned that she could obtain a good insurance policy for the hotel. Breece became the retail agent, working for Vantage in an effort to obtain the best possible insurance policy. Breece contacted Ron Ozbolt at MJ Kelly for assistance in procuring insurance for the hotel.

Ron Ozbolt was a wholesale broker, also known as a surplus lines broker. A wholesale

broker is one who has different sources and contacts to obtain quotes for insurance. One of several sources that Ozbolt contacted to obtain an insurance quote for Vantage on a commercial property policy was Klein.

Klein is a specialty wholesale broker for hotels and related exposures. Klein only sells insurance for ICH on property and liability policies. ICH wrote all of Klein's insurance business for commercial property insurance at the time the Vantage transaction took place. As Scott Klein, the owner of Klein explained it, Klein is "the front line in the sales and marketing." Klein stated that if an insurance broker has a hotel to insure, the broker could send an application to Klein who would process it and then "send it along to the company." In this case, the company was ICH. ICH could then give approval for Klein to extend a quote to the proposed insured.

A.  The Application

According to Klein, the application for an insurance policy comes from the retail broker. Klein receives all of its information from the broker representing the proposed insured. Klein states that it did not have any relationship with Vantage. Vantage disputes Klein's statement that it did not have a relationship with Vantage. Vantage states that Klein received the application from MJ Kelly, processed the application, sent the application to ICH, and received a commission on the premiums paid by Vantage. There is no evidence that Klein had any direct contact with Vantage during this process.

It is undisputed that Renee Nasir and Joe Butte provided information on behalf of Vantage for the insurance application. Nasir is currently the general manager of the Best Western Hotel at issue. At the time the application was completed, Ms. Nasir did not have a formal title, but was in "marketing and sales" for the hotel. Ron Ozbolt has testified that he met

3

with Peggy Breece, Renee Nasir, and Joe Butte on a few occasions to gather information for the application. Ozbolt also had a number of telephone conversations with Breece about the application.

Ozbolt testified in his deposition that he had conversations with Peggy Breece about the fire alarm system at the hotel. Ozbolt testified that Breece "kept insisting that there was a central [station fire alarm]." Breece testified in her deposition that at the time the insurance application was completed, she did not know what a central station fire alarm was. Breece further testified that the application was filled out indicating that the hotel had a central station fire alarm system. It is undisputed that Ozbolt represented to Klein that the hotel had a central station fire alarm. It is undisputed that no one ever asked Klein about the definition of "central station" alarm in connection with the application.

According to Klein, the underwriting decision as to whether or not to write an account is based upon the information contained in the initial application. Vantage adds that the underwriting decision is based not only upon the application, but upon the results of an inspection conducted within thirty days of binding. Klein does not dispute this statement.

In processing the information contained in an application for insurance, Klein puts the information into its own rating system, called "COPE." Rates for a policy are based on the State where the risk is located and the various exposures applicable to the property at issue. Once the policy is rated by Klein, that information and the original application are sent to the entity with binding and underwriting authority to put a sales price on the policy and authorize Klein to issue a quote. In this case, the entity with binding authority was American E & S, the program administrator for ICH for property policies.

4

B.  The Binder

Once the quote authorized by ICH was accepted by Vantage, a policy binder was issued subject to an inspection of the property. Ozbolt told Klein to add certain banks as additional insureds. Klein listed the banks' interests as additional insureds on the "Schedule of Mortgagees" endorsement. Scott Klein testified that he believed the banks were both mortgagees and additional insureds. Klein stated that if a bank's name appears on a schedule of mortgagees, then it is assumed that the bank is "first and foremost" a mortgagee and then an additional insured.

C.  The Inspection

After the policy at issue was bound, Klein contracted with Site Inspections, LLC ("Site") to perform the hotel inspection. All hotels are inspected as part of the underwriting process. The purpose of the inspection was to look at the hotel premises and confirm or deny that the information on the insurance application was accurate. The inspection company was supposed to verify the underwriting guidelines. Klein asserts that the insurance company relies heavily on the accuracy of the inspection report in making decisions about maintaining coverage.

Site's report stated that the type of fire alarm system in the hotel was "central station." The inspector hired by Site to perform the inspection at Vantage's hotel had no training in fire alarm systems. The Site inspector had no idea what a central station alarm system was.

According to Klein, at the time it received the inspection report from Site, it had no reason to believe the information contained in the report was inaccurate. Vantage responds that there were numerous errors in the Site report that should have put Klein on notice regarding the accuracy of the report.

5

It is undisputed that Site's report was provided to ICH so that ICH could make underwriting decisions. In the report, Site made several "recommendations." Due to the number of "recommendations," a notice of cancellation was sent to Vantage on the liability policy. A notice of cancellation was not sent on the property policy at issue in this lawsuit. The insured, Vantage, was required to implement these recommendations to avoid cancellation of the liability policy.

The notice of cancellation was later rescinded and the liability policy was not cancelled.

II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

6

Case 4:04-cv-01012-SOW   Document 191   Filed 08/02/06   Page 6 of 11

III. Discussion

Klein seeks summary judgment on the three claims defendant Vantage has asserted against Klein in its Third Party Complaint. With respect to each claim, Vantage has alleged that Klein breached a duty owed to Vantage.

A. Negligent Misrepresentation (Count I) and Negligence in Procuring and Processing Policy (Count II)

In order to succeed against Klein on a negligence theory, Vantage must demonstrate that Klein owed Vantage some type of duty, that Klein failed to perform that duty, and that Klein's breach was the proximate cause of the plaintiff's injury. Gauert v. Chris-Leef General Agency, Inc., 123 S.W.3d 270, 272 (Mo. Ct. App. 2003)(citing Hecker v. Mo. Prop. Ins. Placement Facility, 891 S.W.2d 813, 816 (Mo. banc 1995)). Klein argues that it did not owe any duty to Vantage to ensure that the information provided on Vantage's application was accurate or to inspect the hotel property for Vantage's benefit. Rather, Klein asserts that it was acting as an agent for ICH.

"[T]he insured's agent or broker has a duty of care, competence, and skill toward the person seeking insurance, whereas no such duty is imposed upon the insurer's agent." Kelley v. Shelter Mut. Ins. Co., 748 S.W.2d 54, 57 (Mo. Ct. App. 1988)(citing Bellmer v. Charter Security Life Ins. Co., 433 N.E.2d 1362 (1982)). Under Missouri law, a "broker" is one who, on behalf of the insured, shops around for insurance among multiple insurance companies. United Fire & Cas. Ins. Co. v. Garvey, 419 F.3d 743, 746 (8th Cir. 2005). In doing so, the broker is "acting as agent of the insured." Id. In this case, Ron Ozbolt of MJ Kelly was acting as Vantage's broker.

7

Ozbolt prepared the application for an insurance policy, with assistance from Breece and Vantage. Then, Ozbolt submitted the Vantage insurance application to different sources of insurance, including Klein, to locate the best premium and the best coverage for Vantage.

A person who is "'delegated to solicit insurance for a particular company, and to refrain from soliciting insurance for any other company, is an agent [of the insurer], and not a broker.'" Garvey, 419 F.3d at 746 (quoting Travelers Indem. Co. v. Beaty, 523 S.W.2d 534, 537 (Mo. Ct. App. 1975)). Finally, "'whether a so-called "independent broker" as distinguished from one who sells only for one company is the agent of the insurer or the insured depends on the facts of a particular situation.'" Id. (quoting Kelley v. Shelter Mut. Ins. Co., 748 S.W.2d at 57).

It is undisputed that Klein is a specialty wholesale broker for hotels and related exposures. It is also undisputed that with respect to property and liability policies, Klein only sold insurance for ICH during the time period at issue in this case.

This case is very similar to Gauert v, Chris-Leef Generl Agency, Inc., *supra*. In Gauert, an individual, Phil Collins, sought a commercial liability insurance policy on behalf of Kansas City Oil Company. 123 S.W.3d at 272. Collins contacted an insurance agency, Encore, to purchase such insurance. Id. An agent at Encore completed the application for insurance and submitted it to eight or nine potential wholesale suppliers, including Chris-Leef. Id. Chris-Leef is a "managing general agency that provides underwriting services for a number of insurance companies." Id. Chris-Leef referred the application to an insurance company, Colony, and received an authorization from Colony to provide a quotation. Id.

Collins' agent received nine quotes on the insurance application. Id. at 273. Since Colony offered the best coverage and quote, Collins, on behalf of Kansas City Oil Company,

8

selected its offer. Id. Chris-Leef issued a binder for the coverage and ordered inspections of the Kansas City Oil Company properties to be insured on behalf of Colony. Id.

Subsequently, Chris-Leef was sued for negligence in the procurement of insurance based upon the allegation that Chris-Leef was Collins' insurance agent and failed to have Collins named as an additional insured on the policy. Id. The Missouri Court of Appeals, Western District, held that Chris-Leef "was not the Collins' insurance agent. The Collinses never had contact with Chris-Leef." Id. The court found that Chris-Leef's actions in issuing the binder and arranging for the inspection, among other activities, "were done for the benefit of the insurance company, Colony, for which Chris-Leef underwrites policies." Id. at 274. In other words, "Encore brings the customer and Chris-Leef brings the insurance policy." Id. The Court affirmed the trial court's entry of summary judgment in favor of Chris-Leef. Id.

Similarly, in this case, MJ Kelley brought the customer and Klein brought the insurance policy. Klein received Vantage's application from Ron Ozbolt of MJ Kelly. Klein then obtained authority from ICH to provide a quote. Klein issued a binder and ordered an inspection of the property, but these actions were taken for the benefit of ICH, not Vantage.

Vantage argues that Klein's action of retaining Site to perform an inspection created a duty to Vantage. Yet, it is undisputed that the inspection was conducted for the benefit of ICH, so that ICH could verify the representations made in the application for insurance and decide whether or not to continue the policy. There is no evidence that the inspection was conducted for the benefit of Vantage.

Next, Vantage contends that because Klein received a commission on the insurance policy that was sold to Vantage, Klein was an agent for Vantage and owed a duty to Vantage. It

9

is not the payment of a commission that creates a duty. Rather, it is an insurance agent's agreement to undertake the task of procuring insurance for a party, with a view to earning a commission, that causes the insurance agent to owe a duty to the party "to act with reasonable care, skill and diligence." Hecker v. Mo. Prop. Ins. Placement Facility, 891 S.W.2d at 816. Klein never undertook the task of procuring insurance for Vantage. Rather, Breece offered to procure insurance for Vantage. Breece, in turn, contacted Ozbolt of MJ Kelly about procuring insurance for Vantage. Ozbolt, with input from Breece and employees of Vantage, prepared the application for insurance on behalf of Vantage. The application was then sent to multiple brokers for quotes on a policy. Klein gave Ozbolt a quote on behalf of ICH. There is no basis for concluding that Klein was working on behalf of Vantage.

Klein sent an invoice for the policy to MJ Kelly, not Vantage. It is undisputed that the Klein invoice included a commission and an inspection fee. MJ Kelly created its own invoice, adding its fee and commission. The MJ Kelly invoice was sent to Breece. Presumably, Breece added her commission and billed Vantage for the total amount. Again, the facts that Klein received a commission and assessed an inspection fee do not cause Klein to become Vantage's agent.

Klein also points out that in Vantage's own Motion for Summary Judgment against plaintiff ICH, Vantage has characterized Klein as ICH's agent. Klein argues that Vantage cannot have it both ways - either Klein acted as the agent of ICH or Klein acted as the agent of Vantage. The facts of this case lead to the conclusion that Klein acted as the agent of ICH.

Since Klein did not owe any duty to Vantage, Klein is entitled to summary judgment on Vantage's negligence claims.

B. <u>Breach of Contract (Count III)</u>

The existence of a valid and enforceable contract is essential in order to state a claim for breach of contract. <u>Mac-Fab Products, Inc. v. Bi-State Development Agency of Missouri-Illinois Metropolitan Dist.</u>, 726 S.W.2d 815, 819 (Mo. Ct. App. 1987)(citation omitted). Vantage has not identified any contract, written or oral, that exists between Vantage and Klein. Instead, Vantage relies on Klein's invoice, charging a commission and assessing an inspection fee, a letter Klein sent to a financing company verifying that MJ Kelly was authorized to accept the premium, and the binder issued by Klein. None of these documents are a contract.

Therefore, Klein is entitled to summary judgment on Vantage's breach of contract claim.

IV. <u>Conclusion</u>

For the reasons stated above, it is hereby

ORDERED that third-party defendant Klein Insurance Services, Inc.'s ("Klein") Motion for Summary Judgment (Doc. #141) is granted. It is further

ORDERED that as no other party has asserted any claim against Klein, Klein is dismissed from this lawsuit with prejudice.

<u>/s/Scott O. Wright</u>
SCOTT O. WRIGHT
Senior United States District Judge

Dated: <u>August 2, 2006</u>