IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| INSURANCE CORPORATION ) | |
| OF HANNOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04-1012-CV-W-SOW |
| ) | |
| VANTAGE PROPERTY ) | |
| MANAGEMENT, L.L.C. d/b/a ) | |
| BEST WESTERN OF K.C. SOUTH, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are plaintiff Insurance Corporation of Hannover's ("ICH") Motion for Summary Judgment (Doc. #145) and defendant Vantage Investment, Inc.'s ("Vantage") Motion for Partial Summary Judgment (Doc. #147). Both of these motions have been fully briefed by the parties. For the reasons stated below, plaintiff ICH's motion is denied and defendant Vantage's motion is granted.

I. Background

Plaintiff ICH issued a policy of insurance to Vantage on November 21, 2003 for a Best Western hotel located in Kansas City, Missouri. On August 10, 2004, the building and certain personal property located in and around the hotel sustained damage from a fire. Vantage presented a claim under the ICH policy, seeking to recover insurance proceeds in excess of $970,000.00 for damages allegedly sustained from the fire. ICH seeks judgment as a matter of law, arguing that the policy is void due to Vantage's concealment of certain information and material misrepresentations in the procurement of the insurance. ICH also contends that Vantage

breached the conditions concerning the protective safeguards required pursuant to the policy. Conversely, Vantage seeks partial summary judgment on its claim for policy proceeds and its claim that plaintiff ICH breached the policy.

The undisputed material facts relevant to the pending summary judgment motions are as follows:

A. <u>The Application</u>

Defendant Vantage hired Peggy Breece ("Breece") of Reassurance Insurance Agency ("RIA"), an independent insurance retail broker to procure a policy of insurance for its Best Western hotel located at 5701 Longview Road in Kansas City, Missouri. Breece contacted Ron Ozbolt of MJ Kelly, another independent retail broker, about procuring an insurance policy for Vantage's hotel. According to Vantage, Breece and Ozbolt worked together to complete an application for insurance on behalf of Vantage.

It is undisputed that Ozbolt, on behalf of Vantage, sent the completed application to Klein Insurance Services ("Klein") for a quote. Klein, a wholesale broker and underwriter, processed the application sent by Ozbolt on behalf of Vantage and prepared a proposed insurance quotation. Klein then sent the proposed quote to American E and S, the agent for ICH, for approval. American E and S reviewed the application packet and proposed quote and passed those documents on to Jerry Mayo at ICH for review.

All of the parties agree that Exhibit 67 is the application for insurance that was submitted by Ozbolt on behalf of Vantage and was subsequently reviewed and relied upon by ICH in determining whether to issue a policy of insurance to Vantage. Jerry Mayo, on behalf of ICH, approved the Klein quotation and approved issuing a policy to Vantage. Vantage states that

Mayo did not rely upon KLE 0002 and KLE 0003 contained in Exhibit 67 in his determination that the hotel had a central station alarm system. ICH admits this assertion. Mayo testified in his deposition that the only document he relied upon in Exhibit 67 to conclude that the hotel had a central station fire alarm system was KLE 0008.

On document KLE 0008, in Exhibit 67, there is a box entitled "FIRE ALARM MANUFACTURER." This language has been circled. Above the box, someone has written "ASK." In the box, someone wrote, "Yes - Ask Central - Each floor." Next to the FIRE ALARM MANUFACTURER box, there are two smaller boxes labeled "CENTRAL STATION" and "LOCAL GONG." Neither of these smaller boxes was checked.

Breece testified in her deposition that at the time the insurance application was completed, she did not know what a central station fire alarm was. Breece testified she and Ozbolt were not "sure what they meant on that application." According to Breece, Ozbolt stated that he would "ask underwriting and we'll know what they want from that point." Breece testified that she is the one who circled the words "FIRE ALARM APPLICATION" and wrote "ASK" as indicated above.

In contrast, Ozbolt testified in his deposition that Peggy Breece "kept insisting that there was a central [fire alarm system]." Ozbolt testified that he and Breece had conversations about what a central station fire alarm was and that after those conversations, Breece represented to him that the hotel had a central station fire alarm system. Ozbolt also testified that when he was at the hotel, prior to submitting the insurance application, a person working at the front desk told him that she did not think that the fire alarm system was centrally wired or hooked up to an outside monitoring source.

3

Renee Nasir, an employee of Vantage who worked at the hotel at issue and provided information for the insurance application, testified in her deposition that prior to the fire, there was no contract with any outside monitoring station for the hotel. Nasir stated that she did know what a central station fire alarm system was prior to the fire.

Vantage states that it did not sign any of the documents contained within Exhibit 67, the insurance application. ICH responds that Vantage's agent signed the application for insurance.

B.     The Policy

On or about November 21, 2003, plaintiff ICH issued a policy of insurance to Vantage through producer American E&S for the policy period of November 21, 2003 through November 21, 2004. MJ Kelly received the original insurance policy from ICH, through American E and S and Klein, and sent it to Breece at RIA.

Vantage states that it determined from the first binder of November 21, 2003 that there were no mortgagee insureds listed. Vantage claims that it contacted Breece and Ozbolt and told them to add the mortgagee insureds. ICH claims that Vantage's agents requested that University National Bank and Republic National Bank be listed as Additional Insureds only.

It is undisputed that Klein issued an amended binder dated November 24, 2003 that included a Schedule of Mortgagees. The Schedule of Mortgagees lists Best Western International, Inc., University National Bank, and Republic National Bank as Additional Insureds.

MJ Kelly issued a Commercial Property Binder to Vantage on December 22, 2003.

Vantage claims that none of the binders stated as a requirement that the hotel have an automatic fire alarm connected to a central station or reporting to a private fire alarm station.

4

ICH disputes this claim, stating that the policy contains a schedule of protective safeguards endorsement with the requirement that the hotel have an automatic fire alarm connected to a central station or reporting to a public or private alarm station.  Vantage states that while the policy contained such language, it was not included in the binder.

Vantage claims that it did not receive a copy of the policy before the fire.  It is undisputed that Klein mailed the insurance policy to MJ Kelly.  Then, MJ Kelly mailed the policy to Breece at RAI.  Breece testified in her deposition that she mailed a copy of the policy to Vantage prior to the fire.  The exact date of mailing by RAI to Vantage is not known.  It is undisputed that RIA delivered a copy of the policy to Vantage on the day of the fire, after the fire.

Vantage's policy of insurance contains the following conditions:

**ICH 06 10 01 (Elec) SCHEDULE OF PROTECTIVE SAFEGUARDS**
\* \* \*

| **Loc/St** | **P-1** | **P-2** | **P-3** | **P-4** | **P-9** |
|---|---|---|---|---|---|
| 1 MO | No | Yes | No | Yes | [Omitted] |

Legends:
P-1   "Automatic Sprinkler System"
P-2   "Automatic Fire Alarm"
P-3   "Security Service"
P-4   "Service Contract"
P-9   "Protective System described in the Schedule"

\* \* \*

**CP 01 35 04 89   PROTECTIVE SAFEGUARDS**
\* \* \*

1. The following is added to the Commercial Property Conditions:
   **PROTECTIVE SAFEGUARDS**
   a. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
   b. The protective safeguards to which this

5

endorsement applies are identified by the following symbols:

                 \*   \*   \*

**"P-2" Automatic Fire Alarm**, protecting the entire building, that is
(1) Connected to a central station; or
(2) Reporting to a public or private fire alarm station.

                 \*   \*   \*

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

Plaintiff ICH alleges that defendant Vantage failed to maintain the protective safeguards required by the insurance policy, specifically an Automatic Fire Alarm. ICH claims that Vantage did not have an Automatic Fire Alarm system within the meaning of the insurance policy because defendant's fire alarm was not wired to a central station. Vantage states that the term "Central Station" is not defined in the policy. ICH admits that no definition is provided. Similarly, "private fire alarm station" is not defined in the policy.

The term "Central Station" is a term having a particular definition in the NFPA Code 72, §3.3.193.1: "A supervising station that is listed for central station service." A "supervising station" is defined as, "A facility that receives signals and at which personnel are in attendance at all times to respond to these signals." NFPA Code 72, §3.3.193.

Vantage's policy of insurance contains the following exclusions:

    2.    The following is added to the EXCLUSIONS section of:
         **CAUSES OF LOSS - BASIC FORM**
         **CAUSES OF LOSS - BROAD FORM**
         **CAUSES OF LOSS - SPECIAL FORM**
         **MORTGAGE HOLDERS' ERRORS AND OMISSIONS**
             **COVERAGE FORM**
         **STANDARD PROPERTY POLICY**

         We will not pay for loss or damage caused by or resulting from fire if,

> prior to the fire, you:
> (1) Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> (2) Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.
>
> * * *

Vantage's policy of insurance contains the following conditions:

**STANDARD PROPERTY POLICY**

* * *

H. Additional Conditions

* * *

2. Concealment, Misrepresentation Or Fraud
   This policy is void in any case of fraud by you as it relates to this Coverage at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

   a. This Policy;
   b. The Covered Property;
   c. Your interest in the Covered Property; or
   d. A claim under this Policy.

* * *

**COMMERCIAL PROPERTY CONDITIONS**

A. **CONCEALMENT, MISREPRESENTATION OR FRAUD**
   This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
   1. This Coverage Part;
   2. The Covered Property;
   3. Your interest in the Covered Property; or
   4. A claim under this Coverage Part.

The policy issued to Vantage by ICH includes a Schedule of Mortgagees. On this document, there is a column for listing the "Type of Mortgagee" and the "Mortgagee, Lien Holder." Defendant's Exhibit D, the Schedule of Mortgagees, shows Best Western International, Inc., University National Bank, and Republic National Bank listed in the column titled

7

"Mortgagee, Lien Holder." In the column titled "Type of Mortgagee" the words "Additional Ins" appear for each of these entities. It is undisputed that Rural Missouri, Inc., a mortgagee, was not listed on the Schedule of Mortgagees.

C.   The Inspection

It is undisputed that Site Inspections ("Site") was hired by Klein to inspect the hotel. The hotel was inspected in December of 2003. The inspection was performed in conjunction with the issuance of the policy. In fact, the inspection was a condition of the policy, to be completed within thirty days after binding. Site hired Mike Allen to inspect Vantage's hotel. Allen had no training on fire alarm systems. Allen did not know what a central station was. Allen testified that Joe Butte or Dwayne Kearns, of Vantage, would have had to have told him that the hotel had a central station in order for him to include that fact in his notes. Allen went to the basement of the hotel and saw what was supposed to be the central alarm system. Site issued a report stating that the hotel had a "central station" fire alarm system.

D.   The Fire

It is undisputed that on or about August 10, 2004, while the policy was in full force and effect, the building located at 5701 Longview Road, Kansas City, Missouri, and certain items of personal property located in and around the building, sustained damage as the result of a fire. Vantage presented a claim under its policy, seeking to recover insurance proceeds in excess of $970,000.00 for damages allegedly sustained as a result of the fire.

II.  Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the

8

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

III. Discussion

A. Plaintiff ICH's Claim that Vantage's Concealment and Misrepresentations Render the Insurance Contract Void From Its Inception

1. Mortgage and Security Interests

Plaintiff ICH argues that Vantage's failure to properly identify the mortgage and security interests in the hotel at issue renders the insurance policy void from its inception. Defendant Vantage claims that it did not conceal any mortgage or security interests, or make any material misrepresentations, in its application for an insurance policy.

Vantage states that Exhibit 67, the application for insurance, was the only document relied upon by ICH in issuing a quote for an insurance policy on the hotel. Exhibit 67 contains a

9

section for listing "ADDITIONAL INTERESTS" by name and address. Next to the box for listing the name and address of the "ADDITIONAL INTERESTS" are smaller boxes for indicating the type of interest: either "LOSS PAYEE" or "MORTGAGEE." None of these boxes were filled in on Exhibit 67. ICH, however, does not focus on this initial application form. Rather, ICH faults Vantage for the manner in which it completed the "SCHEDULE OF MORTGAGEES."

After the initial application form had been completed and submitted, Ron Ozbolt of MJ Kelly informed Klein that Best Western International, Inc., University National Bank and Republic National Bank should be listed on the policy as additional insureds. Klein listed these three entities as "Additional Insureds" on a document titled "SCHEDULE OF MORTGAGEES." It is undisputed that Republic National Bank was not a mortgagee and should not have been included on this document. Rather, Rural Missouri, Inc. was a mortgagee, holding a $1.2 million mortgage, and should have been listed on the "SCHEDULE OF MORTGAGEES." Vantage claims that listing Republic National Bank instead of Rural Missouri, Inc. was an inadvertent mistake.

Material misrepresentations in an insurance application render a policy void from its inception. Cova v. Am. Family Ins. Co., 880 S.W.2d 928, 929 (Mo. Ct. App. 1994). The parties agree that an objective standard is used to determine materiality. Under this standard, a misrepresentation of fact is material if the fact, stated truthfully, "might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium." Cent. Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222, 225 (Mo. Ct. App. 1998)(citation omitted). In other words, in determining whether a particular

misrepresentation in an insurance application is material, so as to void the policy *ab initio*, it must be determined whether truthful answers by the insured would have caused "those engaged in the insurance business" to reject the risk or charge a higher premium. Mears v. Columbia Mut. Ins. Co., 855 S.W.2d 389, 393 (Mo. Ct. App. 1993).

Plaintiff ICH relies on Bearden v. Countryside Cas. Co., 352 S.W.2d 701 (Mo. Ct. App. 1961) to support its claim that "misrepresentations regarding a mortgagee in an insurance policy application [are] material as a matter of law, avoiding the policy . . . ." Pl. Brief p. 11. In Bearden, the insured had been asked by his agent if the property to be insured was mortgaged. 352 S.W.2d at 704. In response, the insured revealed that there was a mortgage on the property; however, he did not tell the agent that there were also "two chattel mortgages" on certain household goods that "were against said property at the time he signed the application." Id.

The Bearden court recognized prior holdings that, "It is usually a question for the jury as to whether or not misrepresentations materially affect the risk, depending largely on the kind and character of misrepresentations." 352 S.W.2d at 707 (citations omitted). The court stated, however, that "where the representations were that the property was not mortgaged, when in fact it was mortgaged for the full value, such misrepresentations, ***under the facts in evidence here***, were material to the risk, as a matter of law, and voided the policy." Id. (emphasis added)(citing Hollenbeck v. Mercantile Town Mutual Fire Ins. Co., 133 Mo. App. 57, 113 S.W. 217; Cagle v. Chillicothe Town Mutual Fire Ins. Co., 78 Mo. App. 215). The Bearden court concluded that misrepresentations "regarding mortgages or encumbrances . . . are material as a matter of law and . . . will avoid a policy." Id. at 708.

Plaintiff ICH paints too simplistic a picture of the analysis to be applied to this issue. In

11

Bearden, the facts were that the insured had been asked a specific question about the existence of mortgages on the property and failed to disclose all of the mortgages on the property. 352 S.W.2d at 704. In this case, the form application completed by Vantage and its agents did not ask whether the subject property was subject to any mortgages or for the amounts owed on said mortgages as was the situation in Bearden.

Furthermore, after the policy was issued, Vantage informed Klein that there were additional interests in the property. These interests were disclosed to ICH on a document titled "SCHEDULE OF MORTGAGEES." The Court finds that there was no misrepresentation or concealment of mortgages by Vantage. Furthermore, there is no evidence before the Court that the existence of mortgagees made any difference to ICH in deciding to issue a quote for an insurance policy on plaintiff's hotel.

The Court finds that Vantage did not make a material misrepresentation as to any mortgagee interests thereby allowing ICH to avoid the policy. ICH's motion for summary judgment on this basis is denied.

    2.    Fire Alarm System

Next, ICH contends that Vantage "represented that its business premises were equipped with a Central Station Fire Alarm when in fact no such alarm was present." It is undisputed that the hotel did not have a fire alarm system that was monitored by anyone off the property at the time of the fire. The quote issued by ICH includes the condition that the hotel have a central station fire alarm.

Defendant Vantage responds that it had a "central station" alarm "as defendant understood that term." Its fire alarm system was connected to a "central station alarm panel in

12

the basement of the hotel." Defendant claims that it did not make any misrepresentations about the fire alarm system.

On the application, Exhibit 67, there is a box to fill in "FIRE ALARM MANUFACTURER." Next to that box are two smaller boxes labeled "CENTRAL STATION" and "LOCAL GONG." In the box for "FIRE ALARM MANUFACTURER," someone has written "Yes - Ask Central - Each floor." Neither of the smaller boxes has been checked.

The Court finds that defendant Vantage did not make a misrepresentation on the application for insurance. The manner in which Vantage filled out the application is not a basis for denying coverage in this case. Plaintiff ICH's motion for summary judgment on this basis is denied.

B.      Alleged Breach of Policy Conditions

Plaintiff ICH claims that defendant Vantage breached the policy condition, contained in the Protective Safeguard Endorsement, that the hotel have a "central station" or "private fire alarm station." Vantage claims that these terms are ambiguous and should have been defined in the policy.

The determination of whether an insurance contract is ambiguous is a matter of law. Wood v. Foremost Ins., 2006 WL 585558 (Mo. Ct. App. 2006). If an insurance contract is open to different constructions, or is ambiguous, Missouri Courts will adopt an interpretation most favorable to the insured. Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co., 959 S.W.2d 864, 869 (Mo. Ct. App. 1997). Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage. Cantrell v. Farm Bureau Town & Country Ins. Co. of Missouri, 876 S.W.2d 660, 663 (Mo. Ct. App. 1994).

13

Vantage suggests that the terms "central station" and "private fire alarm station" are confusing. The Protective Safeguard Endorsement contains the condition that the hotel have an "Automatic Fire Alarm, protecting the entire building that is (1) Connected to a central station; or (2) Reporting to a public or private fire alarm station." Vantage claims that the terms "central station" and "private fire alarm station" should have been defined in the policy because they are not well known by laymen. ICH's own expert testified that people not in the fire alarm industry would not know what a central station was. It is undisputed that neither term is defined in the policy.

Vantage claims that it interpreted "central station" to mean the central alarm panel in the basement of the hotel. Plaintiff interprets these terms to mean an off-site monitoring facility. The Court finds that these terms are ambiguous as used in the policy, without an accompanying definition.

An inspector from Site Inspections, inspecting the property on behalf of plaintiff ICH, prior to the issuance of the final policy, looked at the central station panel located in the basement of the subject hotel and then completed a report stating that the hotel had a central station fire alarm. This fact supports Vantage's interpretation of the term "central station."

The inspection conducted on behalf of ICH also supports Vantage's argument that ICH should not be allowed to deny coverage based upon an alleged breach of the condition that the hotel have a "central station" or "private fire alarm station." *See* Schlessel v. Mass Bonding Ins. Co., 225 N.Y.S. 301 (M.C. N.Y. 1927).

The Court finds that defendant Vantage did not breach the Protective Safeguard Endorsement and is not barred from recovering under the policy on this basis.

14

C.  Defendant Vantage's Motion for Summary Judgment as to Liability

Defendant Vantage moves for summary judgment on Count I of its Counterclaim for policy proceeds. To recover under a fire insurance policy, the insured must establish: (1) that the insurance company issued its policy to the claimant on the property covering loss from the fire; (2) that such property was damaged by fire; and (3) that the policy was in force on the date of the fire. Travelers v. Universal Fire and Cas. Ins. Co., 34 S.W.3d 156 (Mo. Ct. App. 2000). ICH issued a policy on the hotel. The hotel was damaged by a fire and the policy was in force on the date of the fire.

Defendant Vantage gas submitted the required proofs of loss. Plaintiff ICH has not identified any defects in the proofs of loss.

Therefore, defendant Vantage is entitled to recover under the policy. The parties have agreed that the property damage to the hotel and contents amounts to $1,092,570.86. The parties have not agreed on the damage determination with respect to business interruption. Therefore, the Court will set this case for a damages hearing if the parties are unable to agree on the damage amount to be paid for business interruption caused by the fire.

IV.  Conclusion

For the reasons stated above, it is hereby

ORDERED that plaintiff Insurance Corporation of Hannover's ("ICH") Motion for Summary Judgment (Doc. #145) is denied. It is further

ORDERED that defendant Vantage Investment, Inc.'s ("Vantage") Motion for Partial Summary Judgment (Doc. #147) is granted. Summary judgment is entered in favor of defendant Vantage on Count I of its Counterclaim and is awarded damages in the amount of $1,092,570.86

for property damage to the hotel and its contents.  It is further

       ORDERED that the parties are to file a status report with the Court by September 1, 2006, notifying the Court as to whether or not they can agree on an amount of damages to be paid for business interruption.  If the parties cannot agree on the amount of such damages, then the Court will set this matter for a damages hearing.

       /s/Scott O. Wright  
       SCOTT O. WRIGHT  
       Senior United States District Judge

Dated:  August 17, 2006